IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARK HENDERSON**                                                                 **PETITIONER**

No. 4:21CV00096 KGB/PSH

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                          **RESPONDENT**

**FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

Mark Henderson ("Henderson"), who is in the custody of the Arkansas Division of Correction ("ADC"), filed this application for writ of habeas corpus pursuant to 28 U.S.C. §2254 on February 5, 2021. Henderson was convicted in the Circuit Court of Clark County, Arkansas of capital felony murder related to

murders that occurred in 1982. On direct appeal, the Arkansas Supreme Court reversed and remanded the case for a new trial due to an evidentiary error. *Henderson v. State*, 279 Ark. 435 (1983). The second trial resulted in another conviction for capital felony murder, and Henderson was sentenced to life imprisonment without parole. The Arkansas Supreme Court affirmed the conviction. *Henderson v. State*, 284 Ark. 493 (1985). Henderson did not seek postconviction relief in state court.

Henderson advances the following claims for relief:

1. The trial court lacked jurisdiction; and

2. He was denied his right to effective assistance of counsel when his trial attorney failed to investigate, develop, and pursue the defense that someone other than Henderson was responsible for the murders.

**Statute of Limitations**

Payne, in response to the writ application, contends that the statute of limitations bars consideration of these claims. In an August 13, 2021 order, the Court invited Henderson to explain why the petition should not be dismissed on statute of limitations grounds. Docket entry no. 15. Henderson sought and received an extension of time in which to file a response. Docket entry nos. 16 & 17. Despite obtaining additional time, Henderson has not submitted a response to

Payne's limitations argument. Henderson has, however, filed an amended habeas petition, a motion to amend/correct his petition, and a motion for release. Docket entry nos. 18, 20, & 21. The Court will address these pleadings as they relate to Payne's limitations argument.

Section 101 of 28 U.S.C. 2244 (as amended) imposes a one year period of limitation on petitions for writ of habeas corpus:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Henderson was convicted prior to the enactment of the limitations period. Payne correctly asserts that petitioners such as Henderson were allowed one year from the effective date of enactment of the limitation period, or until April 24, 1997, to timely file their petitions. According to Payne, Henderson is more than 24 years late in filing his petition. Henderson's failure to file a timely habeas petition is excused if the limitations period was tolled under the terms of the statute or due to equitable reasons.

Statutory tolling is of no avail to Henderson since he did not pursue a "properly filed application for State post-conviction or other collateral review" in state court. 28 U.S.C. § 2244(2). The Court also notes that a "properly filed" state court petition does not rescue an otherwise untimely petition when "there was no federal limitations period remaining to toll." *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001). In other words, Henderson needed to file a state post-conviction petition before April 24, 1997, in order to benefit from the statutory tolling. And the statute only allows tolling while the state court petition is pending. Here, no state court petition was filed, and therefore no tolling took place pursuant to 28 U.S.C. § 2244(2).

Equitable tolling, which can also excuse the failure of a habeas plaintiff to file a timely petition, is also not available to Henderson under the facts presented.

> Equitable tolling is appropriate where extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time, or where a defendant's conduct lulls the prisoner into inaction. *Id.* The doctrine applies "only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." *Flanders v. Graves,* 299 F.3d 974, 977 (8th Cir.2002). Equitable tolling is an "exceedingly narrow window of relief." *(Citation omitted)*.

*Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

In his recent pleadings (docket entry nos. 18, 20, &21), Henderson alleges he is actually innocent of murder and submits "new evidence" to bolster his assertion. The Supreme Court has considered equitable tolling of the limitations period when actual innocence is alleged. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013). *McQuiggin* holds that actual innocence, if proved, may serve as a gateway through which a petitioner may pass to overcome the expiration of the statute of limitations. The Supreme Court emphasized, however, that a tenable actual innocence gateway plea is rare. To advance a tenable claim, Henderson must meet the following standard:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995). Essentially, Henderson "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S. at 327.

In an effort to meet this demanding standard, Henderson offers as evidence of actual innocence the February 23, 1986 unsworn affidavit of Jeff Brown, Henderson's co-defendant. Docket entry no. 18, pages 7-8. In it, Jeff Brown asserts that he killed the two victims and "had no asesories (sic) or accomplices." *Id.*, page 7. Henderson also offers "the sworn testimony of witnesses Rick Payne, Kenneth Johnson alleging that while confined within the Clark County Jail (Ark) along with Jeff Brown in the spring of 1982. Jeff Brown confessed to them that he Brown while acting alone robbed and then killed the victims...." *Id.*, pages 1-2; docket entry no. 13-4 at 161-167 (Johnson trial testimony) and 168-184 (Payne testimony).

The statements of Brown, Payne, and Johnson do not constitute the "new reliable evidence" envisioned in *Schlup v. Delo, supra.* In *McQuiggin*, the petitioner sought to show his innocence by offering three affidavits pointing to another person as the perpetrator. The Court found the affidavits lacking because the information contained in the affidavits was substantially available to the petitioner at trial. Thus, the affidavits did not amount to "new" evidence. The Court

continued: "Moreover, the proffered evidence, even if 'new,' was hardly adequate to show that, had it been presented at trial, no reasonable juror would have convicted Perkins." *McQuiggin*, 569 U.S. at 400–01. In this instance, the reasoning from *McQuiggin* controls.

First, the testimony of Payne and Johnson was offered at Henderson's trial. By definition, this evidence is not new and cannot be used as a basis for an actual innocence claim. Additionally, Brown's 1986 statement, although contradictory to his testimony at the trial, fails to establish Henderson's actual innocence. The trial transcript reflects that Henderson's defense strategy was to suggest that Brown shot and killed the victims. Brown had already entered a guilty plea to the murders when he testified as a prosecution witness at Henderson's trial. On cross examination, Henderson's attorney pressed Brown on whether he was the shooter and whether he had admitted as much to Henderson and others:

> Q: Did you admit to Mr. Henderson in the Clark County Jail that you were not being truthful in this testimony?
> A. No.
> Q: You did not?
> A. No.
> Q: Have you made statements to other inmates in the penitentiary where you're incarcerated that you in fact committed these killings?
> A: No, I did not.

Docket entry no. 13-4 at 140-141. Henderson's attorney also called J.T. Mitchell, a fellow inmate with Brown in the ADC, and Mitchell testified that Brown bragged

he had pulled the trigger. Mitchell also conceded it was not unusual for inmates to make statements to appear tough in the prison setting. (Tr. 607). It is apparent from the record that Henderson's counsel aggressively sought to show that Brown, not Henderson, was the killer. The jury did not embrace this notion.

Brown's 1986 unsworn statement is not the type of evidence that would have turned the tide so that "no reasonable juror" would have convicted Henderson. A co-defendant's recantation three years after the trial is not necessarily reliable, and must be viewed with skepticism. *See, e.g., Hall v. Lockhart*, 806 F.2d 165, 168 (8th Cir. 1986) (recantations by co-defendants "should be supported, where possible, by additional and independent evidence"). As noted by the Eighth Circuit Court of Appeals in *Hall*, a defendant serving a life sentence, like Brown, "may have nothing to lose by perjuring" himself. *Id.* In addition, the reliability of such a statement only deteriorates further with the passage of twenty plus years before Henderson filed his federal habeas corpus petition. In summary, Henderson fails to establish actual innocence as a pathway to toll the limitations period with regard to his convictions. Henderson does not establish any factual or legal basis for equitable tolling.

## Conclusion

There was no statutory tolling of the limitations period, nor was the limitations period equitably tolled after it began on April 24, 1996. Henderson's February 2021 federal habeas petition was untimely, and the Court recommends dismissal on that basis. The Court also recommends that Henderson's Motion to Amend/Correct and Motion for Release (docket entry nos. 21 and 21) be denied as moot.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 9th day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

10